PAMELA ASHWORTH, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ashworth v. Commissioner
Docket No. 30034-88
United States Tax Court
T.C. Memo 1990-423; 1990 Tax Ct. Memo LEXIS 440; 60 T.C.M. (CCH) 454; T.C.M. (RIA) 90423; August 7, 1990, Filed Decision will be entered for the respondent. Jay Howard Brody, for the petitioner. Thomas M. Rath, for the respondent. HAMBLEN, Judge. HAMBLEN
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies in the amounts of $ 2,148.49 and $ 4,265.54 in petitioner's 1981 and 1982 Federal income taxes, respectively. Respondent also determined an addition to tax for the taxable year 1982 in *441 an amount of $ 325.92 under section 6651(a). [1]
After concessions by petitioner, the only remaining issue is whether petitioner is bound by a joint return for 1982. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner resided at 33712 Grand River Avenue, Farmington, Michigan, at the time the petition in this case was filed. Before her marriage to Robert R. S. Ashworth, Jr., on November 13, 1976, petitioner prepared her own Federal income tax returns. Petitioner knew she was required to file yearly income tax returns for all taxable years. For the taxable years of 1976 to 1981, petitioner and her husband filed Federal income tax returns electing "married filing jointly" status. In preparation of these joint returns, petitioner *442 kept records of personal expenditures, rental receipts and other relevant documents and maintained this information in a file cabinet. For the taxable years 1976 to 1981, petitioner provided her husband with her W-2 forms and all relevant information she maintained that was necessary to prepare the joint tax returns. Petitioner voluntarily signed the joint returns for the years 1976 through 1981 after a quick and superficial inspection of them. On April 15, 1983, petitioner and her husband were granted an automatic four-month extension of time in which to file their 1982 Federal return. On September 14, 1983, petitioner and her husband were granted another extension of time, until October 15, 1983, in which to file their 1982 Federal return. On January 30, 1984, respondent received a 1982 Federal income tax return electing the "married filing jointly" status (hereinafter the "joint return") and bearing the names and Social Security numbers of petitioner and her husband. Petitioner's income and itemized deductions were included in the joint return. The joint return reported an overpayment of $ 2,334.85. Respondent corrected an error in the computation of tax and determined *443 that the overpayment was $ 2,635.92. Respondent assessed petitioner and her husband the tax reported on the joint return on March 5, 1984. Respondent sent petitioner and her husband a refund check in the amount of $ 2,671 on March 23, 1984. Petitioner signed the refund check and then deposited the proceeds in her separate account at Comerica Bank. These proceeds were used to benefit both petitioner and her husband. On or about May 11, 1984, petitioner and her husband permanently separated and ceased to live together. Petitioner and her husband were legally divorced on November 18, 1985. On August 31, 1984, respondent selected the 1982 joint return for audit. On August 29, 1986, petitioner signed a consent to extend the time to assess tax. The consent related to the 1982 taxable year. Other consents were signed by petitioner or her representative on February 25, 1987, and on December 8, 1987. Petitioner, upon the advice of counsel, filed a 1982 Federal income tax return on November 14, 1988. Petitioner elected the "married filing separately" status on the return (hereinafter the "separate return"). Petitioner has submitted payments totaling at least $ 2,042.44 relating *444 to the taxes owing as set forth on the separate return. Also, petitioner's $ 338 overpayment of taxes for the taxable year 1988 were credited to the taxes owing as set forth on the separate return. On November 21, 1988, petitioner filed a timely petition with the U.S. Tax Court regarding respondent's deficiency and addition to tax determination for the 1982 joint return. OPINION The only issue to be decided is whether petitioner should be bound by the 1982 joint income tax return. Petitioner alleges that she never signed the joint return filed in her name. Petitioner asserts that she is not jointly and severally liable for the deficiency and addition to tax relating to the 1982 joint return. Petitioner contends that she should be bound by the 1982 separate return. Respondent determined that the 1982 joint return is binding on petitioner since petitioner signed the 1982 joint return. Alternatively, respondent concludes that petitioner tacitly consented to the joint return by accepting the benefits of it. We hold that petitioner acted in such a manner as to consent to the filing of the joint return and, therefore, is bound by it. *445 Section 6013(d)(3) sets forth that the liability for filing a joint return is joint and several. Section 1.6013-1(a)(2), Income Tax Regs., establishes that, generally, a joint return must be signed by both spouses. However, the determination of whether a return is jointly filed or not depends on the intention of the spouses and not the presence or absence of their signatures. The question of a spouse's intention is a question of fact to be determined from all the circumstances. Estate of Campbell v. Commissioner, 56 T.C. 1, 12 (1971). In a situation where the spouse did not sign the return, the tacit consent rule applies to determine the nonsigning spouse's intent. Howell v. Commissioner, 10 T.C. 859 (1948). Tacit consent exists where one spouse files a joint return without objection of the nonsigning spouse when the nonsigning spouse fails to file a separate return. Howell v. Commissioner, 10 T.C. at 866. Courts have looked to many factors to determine whether consent of the nonsigning spouse exists or not. These factors include: the couple's *446 history in filing joint returns, whether the nonsigning spouse received any of the benefits of the joint return, and whether the nonsigning spouse's income and expenses were reported on the joint return. [2]
Even assuming that petitioner did not sign the 1982 joint return, petitioner's actions amounted to consent for filing the joint return. Petitioner brought forth no credible evidence that she informed her husband or respondent that she intended to file a separate return for the 1982 taxable year. To the contrary, petitioner's actions indicated that she expected to file a joint return with her husband, or at the very least, she consented to the filed joint return by acting in a manner consistent with the acceptance of the benefits of the joint return. We are persuaded that petitioner consented to the "joint return" *447 status for the 1982 return. Petitioner and her husband had filed joint returns for each of the six years immediately preceding the 1982 taxable year. Petitioner and her husband requested and received at least two extensions of time for which to file their 1982 return. Petitioner admits she endorsed the 1982 refund check and used its proceeds for her maintenance. Petitioner did not file a separate return for the 1982 taxable year until November of 1988, over five years after it was due, and over four years after the joint return was audited. Further, petitioner and her agent executed at least three consents extending the time for which respondent could assess tax relating to the joint return. These actions are inconsistent with petitioner's contention that she never intended to be bound by the joint return. Based on petitioner's actions and on the entire record, we find that petitioner did consent to be bound by the 1982 joint return regardless of whether she actually signed it or not. Therefore, we hold that petitioner is jointly and severally liable for the deficiency and addition to tax related to the 1982 joint return. It should be noted that petitioner has made significant *448 payments relating to her 1982 separate return that should be credited toward the deficiencies and additions to tax attributable to the controlling 1982 joint return. We have considered petitioner's other arguments and find them wholly unpersuasive and without merit. To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated all section references are to the Internal Revenue Code of 1954, as amended and in effect for the year in issue.↩
2. Gaviola v. Commissioner, T.C. Memo. 1986-349; Krock v. Commissioner, T.C. Memo. 1983-551; Riportella v. Commissioner, T.C. Memo. 1981-463↩.